1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD R. STEIK, JR., | Case No. 2:24-cv-06828-MRA-JC |
| Plaintiff, | |
| v. | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND AND DIRECTING PLAINTIFF TO RESPOND TO ORDER |
| CITY OF REDONDO BEACH, et al., | |
| Defendants. | |

## I.    INTRODUCTION

On August 5, 2024, Plaintiff Gerald R. Steik, Jr., who is at liberty, is proceeding *pro se*, and has been granted leave to proceed without prepayment of the filing fee ("IFP"), filed a Civil Rights Complaint ("Complaint" or "Comp.") pursuant to 42 U.S.C. § 1983 ("Section 1983") against (1) Redondo Beach Police Detective Patrick Knox, sued in his individual and official capacities; (2-3) Redondo Beach Police Officers Thomas and Harris, sued in their official capacities; and (4) Los Angeles County Deputy Probation Officer ("DPO") Wedlow, sued in her individual and official capacities.[1]  (Docket No. 1).  Plaintiff claims that Defendants violated his rights under the Fourth and Fourteenth

---

[1]As discussed below, the Complaint lists additional Defendants in the caption and mentions others in the claims and allegations, but only these four named above are listed as Defendants within the Complaint, which makes it unclear exactly who is being sued.

Amendments, among other state and federal grounds, by illegally arresting and detaining him, improperly handling evidence, and other conduct.  (See Comp. at 15-21).  He seeks monetary, declaratory, and injunctive relief.  (Comp. at 22-24).

As the Complaint is deficient in multiple respects, including those detailed below, it is dismissed with leave to amend.

## II.   COMPLAINT

### A.   Allegations

Construed liberally, the Complaint alleges the following:

On October 13, 2022, Defendant Detective Knox and other officers of the Redondo Beach Police Department ("RBPD") (including Garcia, Nimmons, and Does 1-3)[2] conducted a search Plaintiff's apartment when he was not home and seized certain items purportedly as evidence.[3] (See Comp. ¶¶ 9-34).  Before entering, the officers had gathered outside the apartment, announced their presence, and ordered Plaintiff to come out with his hands up.  (Comp. ¶¶ 12-13).  When Plaintiff's landlord confirmed that Plaintiff was not home, the officers forcibly removed the screen door and used a battering ram to enter through the front door, with guns drawn.  (Comp. ¶¶ 18-21).  At some point during the search, Detective Knox "emerge[d] briefly to discuss his plans for 'getting her phone and we can put her here [sic],'" while "knowingly nodding" to another officer.[4] (Comp. ¶ 24).  Knox then exited the apartment and spoke about "wanting to get more information from the landlord."  (Comp. ¶ 24).

///

---

[2]As these other officers are not listed as Defendants in the Complaint, it is unclear whether they are being sued here.

[3]Plaintiff's allegations about the search itself are apparently drawn mainly from the officers' body camera footage.

[4]The meaning/significance of this remark is unclear from the Complaint.

2

None of the body camera footage of the search that day shows Knox locating any identity theft evidence that was purportedly seized that day, nor is there any footage of Knox or other officers making phone calls to possible victims of identity theft. (Comp. ¶ 25). Officers' photographs of the search and of the items seized as evidence depict, among other things, "what looks to be a credit card statement from a manila envelope that was "not known to" Plaintiff and appeared, based on body camera footage, to be an envelope brought in by one of the officers; a "partial ID amongst other items taken/removed from trash area in a bag with other garbage"; an open hutch in which the "[c]ontents were staged"; multiple credit cards that were in Plaintiff's name and were solely his own personal credit cards; a bank statement for a card in Plaintiff's name; a "[p]ersonal check stock photo" that Plaintiff "use[d] in his day to day small business expenses." (Comp. ¶¶ 30-34). Photographs and video footage also depicted officers examining a laptop that was taken that day, but was not listed as such. (Comp. ¶ 29). In other video footage from the search, an officer could be seen "dismantling" Plaintiff's home security cameras. (Comp. ¶ 34).

The next day, when Plaintiff returned to his apartment, he found that the front door was damaged, and an "Itemized Receipt for the Seizure of Property" form was left on the dining room table, signed by one of the officers and including a note that an "[i]temized list [was] to follow," though no such list was ever provided to Plaintiff. (Comp. ¶¶ 10-11). At that time, in October 2022, Plaintiff was on probation, but "by all accounts his probation was going well," as he was "accomplishing each goal he had set in rebuilding his life and his famil[y's] stable home." (Comp. ¶ 8). At some point later, a video of the officers knocking down Plaintiff's door during the search, as recorded by Defendant Knox, was posted on Instagram even though no charged had been filed at that time, and no justification had been given for the events that day. (Comp. ¶ 39).

///

In February 2023, Plaintiff obtained a full-time job with an "international engineering, advisory, and project management firm," but he was "told he would need to finalize probation to stay with his employer." (Comp. ¶ 40). Plaintiff then asked his parole officer, Defendant DPO Wedlow, for her support in an early termination of Plaintiff's probation. (Comp. ¶ 41). Although Plaintiff allegedly "had not been in any trouble of any kind," had "managed to successfully see his son through to High School graduation," and had "managed to keep his home and avoid eviction and now had landed a high paying job," DPO Wedlow refused to support an early termination of Plaintiff's probation but did not explain why except to say that "Redondo Beach Police want[ed] to lock [Plaintiff] up." (Comp. ¶ 41).

In April 2023, Plaintiff retained counsel and filed early termination requests in court, which were granted, resulting in the successful termination of Plaintiff's probation on May 8, 2023. (Comp. ¶ 42). That evening, however, DPO Wedlow sent Plaintiff a text message to remind him of their meeting that had been scheduled for the following week. (Comp. ¶ 69).

The next morning, on May 9, Plaintiff was driving his son to his last day of high school before graduation when two Redondo Beach Police Officers, Defendants Thomas and Harris, pulled over Plaintiff's vehicle due to its expired tags. (Comp. ¶¶ 44-45). Plaintiff tried explaining that he had just started working again and had not yet gotten around to renewing the vehicle tags. (Comp. ¶ 46). He also told Officer Thomas that his probation had been terminated the day before. (Comp. ¶ 47). Thomas was about to cite Plaintiff for the expired tags, but then another officer (Doe 4)[5] arrived as backup, and Defendant Officer Harris received a call from Defendant Detective Knox asking the officers to arrest Plaintiff and search his car for identify theft evidence. (Comp. ¶¶ 47-48).

_____

[5]As with the other Doe officers noted above, it is unclear whether Doe 4 is intended as a Defendant.

4

Plaintiff did not physically resist the arrest, but he verbally objected "repeatedly," and kept asking why he was being arrested, but the officers would not say why. (Comp. ¶¶ 51, 54). Plaintiff also kept saying he was not on probation anymore, but Thomas said it did not concern probation. (Comp. ¶ 53). When Thomas asked Plaintiff if he could search the vehicle, Plaintiff did not consent, but Thomas searched the whole vehicle anyway and found nothing incriminating. (Comp. ¶¶ 55, 70). Officer Thomas's subsequent report did not mention the vehicle search or the fact that nothing had been found. (Comp. ¶ 70).

Despite having found no incriminating evidence on Plaintiff or in the vehicle, and allegedly having no warrant or probable cause, officers took Plaintiff to the Redondo Beach Jail Facility for processing. (Comp. ¶ 56). Plaintiff continued to assert that he was not on probation, and he repeatedly asked to speak with Detective Knox, but Knox never spoke with Plaintiff about the matter, and thus never told Plaintiff "why he was arrested or why a probation hold was placed on" him despite that he was "not on active probation" – a fact that Detective Knox allegedly never confirmed when he had Plaintiff arrested that day. (Comp. ¶¶ 59-60). Knox had not been present before, during, or after the traffic stop, though he had received Officer Thomas's report, and he knew no evidence had been found. (Comp. ¶¶ 71, 73).

As Plaintiff later discovered, however, Knox wrote up his arrest report based on assertedly false and misleading information that evidence of identity theft had been found during the traffic stop that day. (Comp. ¶ 72). Knox also included in his report a second identify theft with an offense start date of November 22, 2022, which is assertedly an "entirely arbitrary date" that has "no basis for inclusion in any reports or proceedings other than whatever agenda Detective Knox may have." (Comp. ¶ 72). The arbitrary/incorrect November 2022 date was later formally changed to October 26, 2022, which is still incorrect. (Comp. ¶ 78). Knox's only "evidence" against Plaintiff was actually collected on

October 13, 2022, about eight months before the arrest, and it assertedly included evidence that Knox "created to help his own narrative look legitimate." (Comp. ¶ 75). In his report, Knox wrote that he had found eight California IDs in a hutch next to Plaintiff's kitchen, but that is not verified by any photographs from the October 13 search. (Comp. ¶ 79). The only photographs of these IDs are from October 22, 2022, and they depict the IDs at a different location, not at Plaintiff's apartment. (Comp. ¶ 79; see Comp. ¶¶ 35-37). Plaintiff was subsequently charged based on the assertedly false evidence and false or misleading information that Knox relayed to the district attorney. (Comp. ¶ 74).

Plaintiff was detained for over forty-eight hours following his arrest, with no option for bail, as officers falsely claimed he was on a probation hold and so could not post bail. (Comp. ¶¶ 61-62, 64). Two separate agencies, RBPD and the Los Angeles County Probation Department,[6] were unlawfully reporting that Plaintiff was on a probation hold. (Comp. ¶ 63). As Defendant DPO Wedlow confirmed, the two agencies had been in communication prior to Plaintiff's arrest, but Plaintiff had been given only "veiled warnings in the days leading up to his arrest," such as being told to "stop whatever you're doing," though Plaintiff did not know what that could mean. (Comp. ¶ 63).

On May 11, 2023, Defendants Harris and Thomas brought Plaintiff before a magistrate for the first time since his arrest two days earlier. (Comp. ¶ 65). Plaintiff was then released from custody, and he called DPO Wedlow to ask what had happened. (Comp. ¶ 67). DPO Wedlow was "agitated and clearly nervous" as she explained to Plaintiff that she had seen an email from the court on May 8, 2023, regarding Plaintiff, and though she did not read it, she assumed it was due to the early termination of Plaintiff's probation. (Comp. ¶ 67). Yet, DPO Wedlow said she "had to put a hold" on Plaintiff, based on policy. (Comp. ¶ 67).

---

[6]Plaintiff's allegations leave it somewhat unclear whether these are the two agencies to which he refers.

**B.    Claims**

Plaintiff's Complaint sets forth nine separate "claims" (see Comp. at 15-21), which are liberally construed as follows:

Claim I asserts a violation of Plaintiff's Fourth Amendment rights, and it is predicated on the allegedly "Unlawful Arrest and Detention" of Plaintiff by Defendants Thomas, Harris, and Knox on May 9, 2023, and on the allegedly "Improper Handling of Evidence" seized on October 13, 2022.  (See Comp. ¶¶ 82-84).

Claim II asserts a violation of Plaintiff's rights pursuant to Section 1983, and it is apparently predicated on a "Violation of Constitutional Rights" by Defendants for "engaging in false arrest, an illegitimate probation hold, and denial of bail"; and on "Deliberate Indifference" by Defendants for "disregard[ing]" Plaintiff's constitutional rights, "leading to false imprisonment and denial of due process." (Comp. ¶¶ 85, 87).  The claim asserts that Defendants "act[ed] in their official capacity as law enforcement officers" to violate Plaintiff's Fourth and Fourteenth Amendment rights, and their actions were a "direct cause" of Plaintiff's "unwarranted incarceration, illegitimate probation hold, emotional distress, and violation of basic rights."  (Comp. ¶¶ 86, 88).

Claim III asserts a violation of 18 U.S.C. § 241, for an asserted conspiracy by Defendants to violation Plaintiff's rights, and it is predicated on the alleged (i) "Conspiracy to Unlawfully Arrest Plaintiff" on May 9, 2023; (ii) "Collaborative Effort to Impose Unjustifiable Probation Hold" on Plaintiff, "obstructing his right to bail and due process"; (iii) "Deceptive Reporting Practices and False Dates," as allegedly shown in reports signed by Defendant Knox, that were assertedly "aimed to distort facts and mislead about the processing of evidence"; (iv) "Unlawful Seizure of Evidence and Collaborative Misreporting" regarding evidence seized on October 13, 2022, and the "subsequent collaborative misreporting of dates and ///

processing timelines in official reports"; and (v) "Collusion Between RBPD and Probation" in effectuating Plaintiff's arrest and probation hold.  (Comp. ¶¶ 89-93).

The remaining claims (Claims IV-IX) assert, respectively, the following violations of state law: false arrest (Claim IV);[7] unprofessional conduct (Claim V);[8] perjury, Cal. Penal Code § 118 (Claim VI); negligence, Cal. Civil Code § 1714 (Claim VII); intentional infliction of emotional distress (Claim VIII); and violation of privacy, Cal. Civil Code § 1708.8 (Claim IX).

## III.    PERTINENT LAW

### A.    The Screening Requirement

Since plaintiff is proceeding IFP, the Complaint is subject to *sua sponte* review and must be dismissed if it is:  (1) frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief from a defendant immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B); Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999); see also Calhoun v. Stahl, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (Section 1915(e)(2) applies to all complaints brought by plaintiffs proceeding IFP).

When screening a complaint to determine whether it states any claim that is viable, the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted).  Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure.

─────────────────

[7]Plaintiff cites California Penal Code section 847(b) as the basis for this claim, but that statute does not provide for a cause of action for false arrest; it provides, rather, that law enforcement officers are immune from civil liability for arrests under certain circumstances, such as when the arrest is "lawful" or the officer "had reasonable cause to believe the arrest was lawful."  Cal. Penal Code § 847(b).

[8]Plaintiff cites California Government Code section 6158 as the basis for this claim, but that statute was repealed in 1980, and does not seem to have any relevance here.

1  Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013).  Under Rule 8, each

2  complaint filed in federal court must contain a "short and plain statement of the

3  claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While

4  Rule 8 does not require detailed factual allegations, at a minimum a complaint

5  must allege enough specific facts to provide *both* "fair notice" of the particular

6  claim being asserted *and* "the grounds upon which [that claim] rests." Bell

7  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and

8  quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

9  (Rule 8 pleading standard "demands more than an unadorned, the-defendant-

10  unlawfully-harmed-me accusation" (citing Twombly 550 U.S. at 555)).

11      To avoid dismissal on screening, a complaint must "contain sufficient

12  factual matter, accepted as true, to state a claim to relief that is plausible on its

13  face." Byrd v. Phoenix Police Dep't, 885 F.3d 639, 642 (9th Cir. 2018) (citations

14  omitted); see also Johnson v. City of Shelby, 574 U.S. 10, 12 (2014) (per curiam)

15  (Twombly and Iqbal instruct that plaintiff "must plead facts sufficient to show that

16  [plaintiff's] claim has substantive plausibility").  A claim is "plausible" when the

17  facts alleged in the complaint would support a reasonable inference that the

18  plaintiff is entitled to relief from a specific defendant for specific misconduct.

19  Iqbal, 556 U.S. at 678 (citation omitted); see also Keates v. Koile, 883 F.3d 1228,

20  1242 (9th Cir. 2018) ("[A] [Section 1983] plaintiff must plead that each

21  Government-official defendant, through the official's own individual actions, has

22  violated the Constitution." (quoting Iqbal, 556 U.S. at 676)).  Allegations that are

23  "merely consistent with" a defendant's liability, or reflect only "the mere

24  possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as

25  required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is

26  "plausible on its face."  Iqbal, 556 U.S. at 678-79 (citations and quotation marks

27  omitted).

28  ///

At this preliminary stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'" (quoting Iqbal, 556 U.S. at 678-79)), cert. denied, 574 U.S. 1077 (2015).

In general, civil rights complaints are interpreted liberally in order to give *pro se* plaintiffs "the benefit of any doubt." Byrd, 885 F.3d at 642 (citations and internal quotation marks omitted).  Nonetheless, a *pro se* plaintiff must still follow the rules of procedure that govern all litigants in federal court, including the Rule 8 requirement that a complaint minimally state a short and plain statement of a claim that is plausible on its face.  See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure." (citation omitted)), cert. denied, 516 U.S. 838 (1995); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights complaint may not supply essential elements of [a] claim that were not initially pled." (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation marks omitted; ellipses in original)).

If a *pro se* complaint is dismissed because it does not state a viable claim, the court must freely grant "leave to amend" if it is "at all possible" that the plaintiff could fix the identified pleading errors by alleging different or new facts. Cafasso v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); Lopez v. Smith, 203 F.3d at 1126-30 (citations and internal quotation marks omitted).

**B.    Section 1983 Claims**

To state a Section 1983 claim, a complaint must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal

1  rights.  42 U.S.C. § 1983; <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (citations

2  omitted); <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).

3  There is no vicarious liability in Section 1983 lawsuits.  <u>Iqbal</u>, 556 U.S. at 676.

4  Hence, a government official may not be held liable under Section 1983 unless the

5  particular official's own actions caused the alleged constitutional deprivation.

6  <u>OSU Student Alliance v. Ray</u>, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing <u>Iqbal</u>,

7  556 U.S. at 676), <u>cert. denied</u>, 571 U.S. 819 (2013).  A Section 1983 plaintiff must

8  establish both causation-in-fact and proximate (<i>i.e.</i>, legal) causation.  <u>See</u> <u>Harper</u>

9  <u>v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir. 2008).  Allegations

10  regarding Section 1983 causation "must be individualized and focus on the duties

11  and responsibilities of each individual defendant whose acts or omissions are

12  alleged to have caused a constitutional deprivation."  <u>Leer v. Murphy</u>, 844 F.2d

13  628, 633 (9th Cir. 1988) (citations omitted).  "Sweeping conclusory allegations

14  [regarding causation] will not suffice . . . ."  <u>Id.</u> (citation omitted).

15      An individual government official "causes" a constitutional deprivation

16  when he (1) "does an affirmative act, participates in another's affirmative acts, or

17  omits to perform an act which he is legally required to do that causes the

18  deprivation"; or (2) "set[s] in motion a series of acts by others which the

19  [defendant] knows or reasonably should know would cause others to inflict the

20  constitutional injury."  <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 915 (9th Cir.

21  2012) (en banc) (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743-44 (9th Cir. 1978))

22  (quotation marks omitted).  Similarly, a government official acting in a

23  supervisory capacity "causes" a deprivation to the extent he (1) personally

24  participates in or directs a subordinate's constitutional violation; or (2) was not

25  "physically present when the [plaintiff's] injury occurred," but the constitutional

26  deprivation can, nonetheless, be "directly attributed" to the supervisor's own

27  wrongful conduct.  <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011), <u>cert.</u>

28  ///

1     denied, 566 U.S. 982 (2012); <u>see also</u> <u>OSU Student Alliance</u>, 699 F.3d at 1069

2     (citing <u>Iqbal</u>, 556 U.S. at 676).

3  **IV.    DISCUSSION**

4         Plaintiff's Complaint is dismissed with leave to amend because it violates

5  Rules 8(a) and 10(a) of the Federal Rules of Civil Procedure, among other

6  deficiencies, including those addressed below.

7         First, the Complaint violates Rule 8(a) because it fails to clearly identify

8  who is being sued and on what grounds.  As explained above, Rule 8(a) requires a

9  complaint to contain "a short and plain statement of the claim showing that the

10  pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and its purpose is to ensure

11  that a complaint "fully sets forth who is being sued, for what relief, and on what

12  theory, with enough detail to guide discovery." <u>McHenry v. Renne</u>, 84 F.3d 1172,

13  1177 (9th Cir. 1996); <u>see also</u> <u>Cafasso</u>, 637 F.3d at 1058 (a complaint violates

14  Rule 8 if a defendant would have difficulty understanding and responding to the

15  complaint); <u>McKeever v. Block</u>, 932 F.2d 795, 798 (9th Cir. 1991) (noting that

16  under Rule 8(a) a complaint must contain "sufficient allegations to put defendants

17  fairly on notice of the claims against them").

18         Here, the Complaint fails sufficiently to identify who is being sued because

19  it does not provide a clear list of the Defendants in this case.  The body of the

20  Complaint lists four Defendants – (1) Detective Knox, sued in his individual and

21  official capacities; (2) Officer Harris, sued in his official capacity; (3) Officer

22  Harris, sued in his official capacity; and (4) DPO Wedlow, sued in her individual

23  and official capacities.  (Comp. at 2-3).  The caption of the Complaint lists those

24  four and several others – the City of Redondo Beach, the RBPD, the Los Angeles

25  County Manager, the Los Angeles County Probation Department, and Does 1-20.

26  (Comp. at 1).  Some of these – including the County Manager and Does 6-20 – are

27  ///

28  ///

not mentioned elsewhere, either in the factual allegations or the claims.[9]  (See Comp. at 4-21).  Yet, other individuals are referenced in the factual allegations and/or claims, such as Officers Garcia and Nimmons (see Comp. at 4-6, 17), but are not included in the caption or the list of Defendants (see Comp. at 1-3).

The only individuals specifically referenced in Plaintiff's claims (other than Plaintiff) are DPO Wedlow, Detective Knox, and Officers Thomas, Harris, and Garcia.[10]  (See Comp. at 15-21).  It is therefore unclear which other individuals, if any, are being sued in the claims, or for what particular conduct.  To state federal claims against Defendants, as indicated above, Plaintiff must allege facts showing that each individual Defendant violated his rights – and conclusory allegations, including Plaintiff's conclusory allegations of conspiracy, do not suffice.  See Leer, 844 F.2d at 633.

These problems are compounded by the wide breadth of some of the claims.  Claim I, for example, asserts a Fourth Amendment violation based on the circumstances of the seizure of evidence on October 13, 2022, as well as the arrest and detention on May 9, 2023, though each of these events allegedly involved a variety of distinct actions by numerous individuals.  (See Comp. at 15-16).  Claim II appears to concern the same May 9, 2023 arrest and detention, but it seems broader in some respects, as it generally asserts violations of "Constitutional Rights," while also citing the Fourth and Fourteenth Amendments and asserting "deliberate indifference" and "denial of due process," but without ever clearly defining which particular legal grounds and conduct are encompassed by the

---

[9]While Local Rule 19-1 permits Plaintiff to sue up to ten (10) unidentified "Doe" Defendants – not twenty as Plaintiff may intend to sue here – Plaintiff must make individualized allegations about each Doe Defendant, with facts that demonstrate a causal link between each such official's actions and an alleged constitutional violation.

[10]DPO Wedlow is not named in the claims, but Claim III refers to Plaintiff's "probation officer."  (Comp. ¶ 93).

claim.[11]  (Comp. at 16).  Claim II's reference to Defendants' "official capacity" additionally makes it unclear whether they are being sued only in that capacity in the claim.  In sum, the Complaint deprives Defendants of adequate notice of the claims against them, in violation of Rule 8.

Second, in light of the discrepancies regarding the Defendants named in the caption and elsewhere, the Complaint appears to violate Rule 10(a), which essentially requires that "all the parties" be named in the caption of a complaint. Fed. R. Civ. P. 10(a) ("Caption; Names of Parties. . . . [T]he title of the complaint must name all the parties"); see also Ferdik v. Bonzelet, 963 F.2d 1258, 1260-63 (9th Cir.), as amended (May 22, 1992) (affirming dismissal of action based on failure to comply with court order that complaint be amended to name all defendants in caption as required by Rule 10(a)), cert. denied, 506 U.S. 915 (1992).

Third, among other deficiencies, Claims III and VI of the Complaint fail to state any viable claim for relief because they are predicated solely on asserted violations of 18 U.S.C. § 241 and California Penal Code § 118, respectively, which are "criminal statutes that do not give rise to civil liability."  Allen v. Gold Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006) (affirming dismissal of a claim under 18 U.S.C. § 241), cert. denied, 549 U.S. 1231 (2007); see also Ellis v. City of San Diego, 176 F.3d 1183, 1189 (9th Cir. 1999) (district court

_____

[11]As noted above, Claim II purports to be predicated on Section 1983 – "Deprivation of Rights Under Color of Law."  (Comp. at 16).  Section 1983 is appropriately invoked in this case, as it provides a statutory mechanism for bringing suit against those who violate one's federal rights while acting under color of law.  See 42 U.S.C. § 1983.  However, because the provision may be invoked to assert violations of any number of different federal rights, its application is too general to cite alone as a basis for an individual claim, as Plaintiff essentially does here. Doing so deprives Defendants of sufficient notice as to *which* right(s) they violated, and makes it impractical for Defendants to properly respond to, and defend against, the claim.  Indeed, even Plaintiff's more specific reference to his "rights secured by the Fourth and Fourteenth Amendments" is too broad, given that each of these provisions – and especially the Fourteenth Amendment – comprises different rights.

properly dismissed "alleged violations of 16 sections of the California Penal Code" because "these code sections do not create enforceable individual rights"); Henneberry v. City of Newark, 2014 WL 4978576, at *17 (N.D. Cal. Oct. 6, 2014) ("The Court has reviewed [California] Penal Code section[] 118 . . . and finds no indication that civil enforcement of any kind is available to Plaintiff.").

Fourth, the Complaint fails to state a claim against any Defendants in their official capacities, or against any of the government entities themselves (*e.g.*, the City of Redondo Beach, the RBPD, or the Los Angeles County Probation Department). A claim against a Defendant in his or her official capacity is equivalent to a claim against the state or local government entity that employs the named individual. Kentucky v. Graham, 473 U.S. 159, 166 (1985); Center for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008), cert. denied, 555 U.S. 1098 (2009). A plaintiff pursuing claims against a defendant in his or her official capacity must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. See Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's "policy or custom" must have played a part in the violation of federal law.'" (quoting Graham, 473 U.S. at 166)). That is, the plaintiff must establish an affirmative causal link between the policy at issue and the alleged constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 391-92 (1989); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996) (citing Hafer, 502 U.S. at 25), cert. denied, 519 U.S. 1111 (1997).

Here, Plaintiff does not clearly identify any custom, policy, or practice of the state or prison that violated his constitutional rights. See Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir.) (state prison administrators "liable in their official capacities only if policy or custom played a part in the violation of federal law" (citation omitted)), cert. denied, 534 U.S. 1066 (2001). Moreover while a "local

government may [also] be liable under [Section] 1983 for an official's conduct where the official had final policymaking authority concerning the action at issue, and where the official was the policymaker for the local governing body for the purposes of the particular act," <u>Garmon v. County of Los Angeles</u>, 828 F.3d 837, 846 (9th Cir. 2016), Plaintiff does not plausibly allege that any action against him was directed or carried out by any such official, such as the RBPD chief.  Instead, based on Plaintiff's allegations, the conduct against Plaintiff appears to have involved or been led by just a few individuals – such as Detective Knox, DPO Wedlow and Officers Garcia, Harris, and Thomas.

Accordingly, dismissal with leave to amend is warranted for violation of Rules 8 and 10 and other deficiencies, including those addressed above.[12]

**V.   ORDERS**[13]

In light of the foregoing, IT IS HEREBY ORDERED that the Complaint is dismissed with leave to amend.

IT IS FURTHER ORDERED that within fourteen (14) days of the date of this Order, plaintiff must do one of the following:

///

///

///

_____

[12]That only certain deficiencies are addressed above should not be construed as validating the merits of other portions of the Complaint in any respect.

[13]The Magistrate Judge's orders herein constitute non-dispositive rulings on pretrial matters.  <u>See</u> <u>McKeever v. Block</u>, 932 F.2d 795, 797-98 (9th Cir. 1991) (magistrate judges can dismiss complaints with leave to amend; dismissal of complaint with leave to amend is non-dispositive matter).  To the extent a party disagrees with such non-dispositive rulings, such party may file a motion for review by the assigned District Judge within fourteen (14) days.  <u>See</u> Local Rule 72-2.1.  To the extent a party believes the rulings to be dispositive, rather than non-dispositive, such party has the right to object to this Court's determination that the rulings are non-dispositive within fourteen (14) days.  A party will be foreclosed from challenging the rulings herein if such party does not seek review thereof, or object thereto.

1.     File a First Amended Complaint which cures the pleading defects set forth herein;[14] or

2.     Sign and file the attached Notice of Dismissal which will result in the voluntary dismissal of this action without prejudice; or

3.     File a Notice of Intent to Stand on Complaint, indicating plaintiff's intent to stand on the original Complaint despite the pleading defects set forth herein, which may result in the dismissal of this action in its entirety based upon such defects.

**Plaintiff is cautioned that plaintiff's failure timely to file a First Amended Complaint, a Notice of Dismissal, or a Notice of Intent to Stand on Complaint may be deemed Plaintiff's admission that amendment is futile, and may result in the dismissal of this action with or without prejudice on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute and/or for failure to comply with this Order.**

IT IS SO ORDERED.

DATED: April 7, 2025

_____
/s/

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

Attachments

---

[14]The Clerk is directed to provide plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate plaintiff's filing of a First Amended Complaint if he elects to proceed in that fashion.  Any First Amended Complaint must:  (a) be labeled "First Amended Complaint"; (b) be complete in and of itself and not refer in any manner to the original Complaint – *i.e.*, it must include all claims on which plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of each of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) for relief; (f) allege specifically what each defendant did and how that individual's conduct specifically violated plaintiff's civil rights; and (g) not add defendants or claims that are not reasonably related to the claims asserted in the original Complaint.